UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KIMBERLY M. RUTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:11-cv-00392-CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On October 7, 2011, Plaintiff, Kimberly M. Rutt ("Rutt") filed her complaint in this Court. On July 20, 2012, Rutt filed an opening brief requesting that this Court reverse the ALJ's decision or remand this matter to the Commissioner of Social Security ("Commissioner"). On October 22, 2012, the Commissioner filed a response. On November 5, 2012, Rutt filed a reply. The undersigned now enters an opinion and order based on the parties' consent to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

**I.   PROCEDURE**

On June 11, 2007, Rutt filed concurrent applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI, respectively. In both applications, Rutt alleged a disability onset of January 22, 2007. These claims were first denied on October 29, 2007, and then again upon reconsideration on February 22, 2008. Subsequently, Rutt filed a request for hearing on March 7, 2008. The hearing was held on March 18, 2010, in South Bend, Indiana and was attended by Rutt and an impartial vocational expert ("VE").

At the hearing, the ALJ found that Rutt met the insured status requirements of the Social Security Act ("the Act") through March 31, 2008, and had not engaged in substantial gainful

activity since the alleged onset date of January 22, 2007.  Further, the ALJ found that Rutt had severe impairments that included (1) left hip osteoarthritis with history of hip replacement and (2) coronary artery disease with coronary artery bypass graft.  However, the ALJ found that these impairments, although severe, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ found that Rutt retained the residual functional capacity ("RFC") to perform sedentary work with no climbing, only occasional kneeling, crouching and crawling and no work involving uneven slippery surfaces.  Further, the ALJ found that Rutt would be unable to perform her past relevant work, but could perform work that existed in significant numbers in the national economy based on her age, education, work experience, and RFC.  The ALJ therefore concluded that Rutt was not disabled.

Accordingly, the ALJ issued a decision denying Rutt's applications for DIB and SSI on August 9, 2010.  On August 9, 2011, this decision became final after Rutt's request for review to the Appeals Council was denied.  Rutt now seeks this Court's review of the ALJ's decision.

**II.    ANALYSIS**

    **A.    Facts**

Rutt was 46 years old at the date of the alleged disability's onset and 48 years old at the time of the administrative hearing.  Rutt has been married three times and has two children.  She is 5'2" in height and weighs 160 lbs.  She has a tenth grade education and has not worked since 2006.

        **1.    Relevant medical evidence**

In 1991, Rutt was involved in a car accident that severely damaged her left hip and pelvis.  This accident required three left hip replacements with the last occurring in 2004.  In June of 2005, Rutt was diagnosed with coronary artery disease and had surgery to improve blood

flow to the heart in May of 2006.  During this procedure, Rutt's sternum bone was dissected and reconnected with steel wire.

In June of 2006, at a consultation with Dr. Michael Steinberg, her cardiac surgeon, Rutt was cleared to return to work with a 10 pound lifting restriction for one month.  After this period Dr. Steinberg indicated that Rutt would be able to perform her regular work activity without restrictions.

On January 12, 2007, Rutt was admitted to the ER for chest pains with shortness of breath.  These complaints resulted in a clear CT scan and a cardiac catheterization, which showed that all grafts created during surgery were "widely patent with good flow" (Tr. 327).  The ER physicians concluded that Rutt's chest pain was non-cardiac and discharged her.

In February 2007, Rutt began seeing Dr. Volker Blankenstein, a primary care physician.  At her first visit on February 2, 2007, Rutt complained of chest pain.  Dr. Blankenstein diagnosed Rutt with mild COPD.  In transferring Rutt's medical records to Dr. Blankenstein, Dr. Ajazuddin Z. Shaikh, in a letter dated February 7, 2007, reported that Rutt was "very noncompliant with her medication, and has also persisted to smoke despite repeated advice to the contrary" (Tr. 342).

On June 9, 2007, Rutt went to the ER for a second time due to chest pain.  The CT scan was normal once again.  On July 5, 2007, in a follow-up visit with Dr. Blankenstein, Rutt denied any further chest pain and indicated that she became mildly short of breath when walking long distances or up and down stairs.  (Tr. 451).  On July 31, 2007, Dr. Fernando Montoya, a state agency reviewing physician, completed a Residual Functional Capacity Assessment to determine Rutt's limitations.  Dr. Montoya gave Rutt a primary diagnosis of coronary artery disease with a secondary diagnosis of COPD.  Dr. Montoya concluded that Rutt could occasionally lift 50

pounds, frequently lift 25 pounds, and could stand/walk and sit for about six hours each in a workday.

On August 26, 2007, Rutt visited the ER seeking treatment for ongoing significant alcohol abuse, depression, and suicidal ideation. After Rutt's mood was stabilized she was discharged from the ER. Two days later, on August 28, 2007, Dr. Peter Sices, a state agency consulting physician, performed a physical consultative exam. Dr. Sices noted clear breath sounds, no impairment to gait, and no impairment to fine and gross manual dexterity. Dr. Sices noted that Rutt likely had COPD and suffered from osteoarthritis of the left hip and coronary artery disease. Dr. Sices indicated that movement muscle strength was reduced to 2/5 in the left hip and 3/5 in the left quadriceps, but muscle tone was normal and gait was without a limp. Further, Dr. Sices noted that range of motion, although reduced in the left hip, was normal elsewhere. Finally, Dr. Sices noted that the cause of Rutt's alleged pain in her other leg and arms "is unclear and not associated with findings on examination" (Tr. 439).

On October 24, 2007, Dr. Montoya, on behalf of the state, completed a second Residual Functional Capacity Assessment with a primary diagnosis of osteoarthritis of the left hip and a secondary diagnosis of coronary artery disease. Dr. Montoya concluded that Rutt's ability to lift 50 pounds occasionally should be reduced to 20 pounds but reported that Rutt was still able to lift 10 pounds frequently. Further, Dr. Montoya limited Rutt to frequently balancing or stooping, occasionally climbing stairs, kneeling, crouching, or crawling, and never using a ladder, rope, or scaffold. Finally, Dr. Montoya indicated Rutt should avoid moderate exposure to environmental hazards.

On November 23, 2007, Rutt sought medical attention for chest pain after consuming 7 to 10 alcoholic beverages while at home. The ER physician's report indicated that Rutt's chest

4

discomfort was non-cardiac. The report indicated a history of alcohol abuse and continued smoking against medical advice. On February 20, 2008, Dr. J.V. Corcoran, a state agency reviewing physician, affirmed Dr. Montoya's October 2007 Residual Functional Capacity Assessment.

On August 6, 2008, following another episode of intoxication that involved pills "to keep the buzz going," Rutt was taken to the ER. Cardiac examinations indicated Rutt's complaints were benign and after undergoing a psychological evaluation, she was discharged. In November 2008, Rutt established care with Dr. Arain, a primary care physician, complaining of right leg and hip pain. Dr. Arain found that Rutt had full muscle strength in her extremities. A follow-up visit indicated that Rutt's lungs were clear. However, a CT scan did show that her sternum had not completely fused and the steel wire used to connect the fragments appeared fractured. Rutt was referred to a pulmonologist and cardiothoracic surgeon. An ER visit on July 15, 2009 due to blood-streaked sputum resulted in unremarkable diagnostic findings. On August 11, 2009, Dr. Arain filled out a physician questionnaire indicating that he had seen Rutt on four occasions and that she was very non-compliant but able to perform activities of daily living without limitation. The record contains no medical evidence beyond further routine check-ups until the administrative hearing on March 18, 2010.

    **2.**    **Rutt's Testimony**

At the ALJ hearing, Rutt testified that her condition had worsened since she filed her applications for DIB and SSI. Rutt testified that she is only able to walk a block to a block and a half before experiencing hip discomfort. Rutt reported poor memory, breathing problems, and a history of chest pain. Rutt also reported that her medications made her tired and that her non-compliance with certain medications was due to lack of insurance.

Rutt reported experiencing hand pain due to fibromyalgia and carpal tunnel syndrome. She indicated that comfortable lifting was limited to a gallon of milk. Rutt testified that she walked around and watched T.V. during the day. She indicated she is able to do light housework including dusting and cooking and can attend to her own personal and self-care needs. Rutt indicated she drives infrequently to the store to shop. Rutt denied drinking and reported that she last drank seven months prior to the hearing.

### 3. VE's Testimony

At the administrative hearing, the ALJ asked the VE to consider a hypothetical individual who had the same vocational background and RFC as Rutt. Considering Rutt's exertional and nonexertional limitations, the VE testified that, given Rutt's age, education, work experience, and RFC, a hypothetical individual with the same limitations could perform the duties of a representative occupation. Specifically, the VE testified that Rutt could perform work as a table worker with approximately 50 jobs in the regional area, 800 jobs in Indiana, and 20,000 jobs nationally. Additionally, the VE testified that Rutt could perform work as a telephone quotation clerk with approximately 50 jobs in the region, 300 jobs in Indiana, and 6,000 jobs in the national economy.

### A. Standard of Review

In reviewing disability decisions, district courts shall affirm an ALJ's decision so long as it is supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). To be considered substantial, the evidence of record must support a conclusion a reasonable mind would accept as adequate. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the ALJ's opinion lacks evidentiary support or does not sufficiently discuss the issues it must

be reversed. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, so long as the ALJ creates a logical bridge, connecting the evidence to her final conclusion, the court may not substitute its own judgment or re-weigh any evidence. *Haynes*, 416 F.3d at 626. A logical bridge need not recite every piece of testimony or evaluate every piece of evidence. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Rather, the ALJ's opinion must explain her decision with enough detail and clarity to allow for satisfactory appellate review. *Haynes*, 416 F.3d at 626. At this stage, all legal conclusions are reviewed *de novo* but the ALJ's factual determinations are given deferential treatment as she is in the best position to see, hear, and evaluate witnesses. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); *see also Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

In the instant case, Rutt must establish disability in order to collect DIB or SSI. *See* 42 U.S.C. § 423(a)(1)(D). Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* The Social Security Administration ("SSA") has established a sequential five-part test to determine whether a claimant's impairment meets the definition above. 20 C.F.R. § 404.1520. The ALJ must establish whether: (1) the claimant is involved in substantial gainful activity ("SGA"); (2) the claimant has a severe medically determinable physical or mental impairment or combination thereof; (3) the claimant's impairment or combination thereof meets or equals one of the impairments listed in the regulations, precluding SGA; (4) the impairment impedes the claimant's RFC to a degree that precludes pursuing past relevant work; and (5) given the claimant's age, education, work experience, and RFC, adjusting to other work existing in the national economy is precluded. *Id.* The burden of proof is on the

claimant until step five where the burden shifts to the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

To establish disability, an affirmative answer is required at either step three or step five. *Briscoe*, 425 F.3d at 352. At step three, if the claimant's impairment is listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not listed, the claimant's RFC is assessed to determine the claimant's ability to pursue past relevant work at step four or ability to adjust to other work in the national economy at step five. 20 C.F.R. § 404.1520(e)-(g).

### B.      Issues for Review

This Court must decide whether substantial evidence supports the ALJ's determination that Rutt was not disabled because she could make a successful adjustment to other work existing in significant numbers in the national economy. Rutt argues that the decision is not supported by substantial evidence. Specifically, Rutt argues that the ALJ's step three analysis was perfunctory and resulted in a flawed RFC determination that did not account for all of her impairments.

#### 1. The ALJ's step three determination that Rutt's impairments did not meet or equal a medical listing is supported by substantial evidence.

At step two, the ALJ found that Rutt had two severe impairments: osteoarthritis in her left hip with history of hip replacement and coronary artery disease with coronary artery bypass graft. However, at step three, the ALJ determined that these impairments did not meet or equal a musculoskeletal impairment under listing § 1.00 or a cardiovascular system impairment under listing § 4.01. Rutt claims that the ALJ's step three determination constitutes reversible error.

##### a. Substantial evidence supports the ALJ's step three determination that Rutt's impairments did not meet a medical listing.

At step three of the sequential test, an ALJ must identify the appropriate listing of the claimant's impairment and explain why the claimant meets or does not meet the listing. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). Where an ALJ omits the applicable listing and provides only a superficial analysis, reversible error is committed. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Although step three analysis requires more than a bare conclusion, an ALJ need not "repeat substantially similar factual analyses" at every step where doing so would be a "needless formality." *Id.* at 370, n. 5. Where an ALJ's step three analysis cites a listing and couples it with an extensive discussion of the claimant's impairments when determining her RFC, reversible error is not committed. *Id.*; *see also Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("an ALJ need not provide a complete written evaluation of every piece of testimony and evidence").

Here, Rutt alleges that the ALJ's analysis of her impairments under the listings was perfunctory. Specifically, Rutt alleges that her hip injury meets listing § 1.03, which covers reconstructive surgery of a major weight bearing joint and that her coronary artery disease meets listing § 4.01, which covers cardiovascular system impairments. Rutt contends that her injuries meet these listings and that the ALJ's determination that they do not constitutes reversible error.

In his decision, the ALJ discussed listings under § 1.00, inclusive of § 1.03, but found that "the medical evidence of record does not show that the claimant's condition is supported by the medical criteria contemplated within Medical Listing § 1.00 (musculoskeletal) for *any of the listed conditions*." (Tr. 85) (emphasis added). Further, the ALJ noted that the medical evidence of record regarding Rutt's hip did not reflect a finding that she was unable to ambulate effectively, a necessary requirement to meet listing § 1.03. The ALJ's determination that Rutt's hip injury did not meet any finding is consistent with his specific finding that, although her range

of motion was reduced, physical musculoskeletal examinations on record indicated her abilities were within normal limits. Additionally, the ALJ noted that multiple examinations consistently showed unremarkable musculoskeletal findings and no impairments related to gait, coordination, or fine/gross manual dexterity. Further, the ALJ noted that an October 2007 x-ray of Rutt's left hip showed unchanged findings since 1994.

Second, the ALJ noted that Rutt's coronary artery disease and subsequent surgery did not necessitate a finding of severity that was sufficient to meet any medical listing under § 4.01. To meet listing § 4.01, a claimant must present evidence establishing that their coronary artery disease results in a marked limitation in physical activity. Here, the ALJ noted that the medical evidence of record indicated that Rutt's coronary artery disease did not result in a marked limitation of physical activity. Specifically, the ALJ cited evidence that Rutt's surgery to correct her coronary artery disease went well and allowed her to return to full-time work with only temporary lifting restrictions. Further, the ALJ indicated that Rutt's complaints of heart-related pain resulted in normal CT scans and the conclusion that her chest pain was non-cardiac. Thus, the ALJ's determination that Rutt's coronary artery disease did not meet listing § 4.01 is supported by substantial evidence.

The ALJ's analysis of Rutt's impairments under the listings was not perfunctory. To find Rutt's argument persuasive, this Court would have to overlook the ALJ's extensive discussion of evidence indicating that Rutt's ability to ambulate was within normal range and that her chest pain was non-cardiac. The ALJ's finding that Rutt's injuries did not meet a listing is consistent with his determination that her subjective complaints of pain were not credible. Although Rutt testified that her left hip injury resulted in her inability to walk, the ALJ did not find any evidence to support this subjective complaint. Specifically, the ALJ found Rutt's complaints not

credible because it conflicted with her testimony regarding her daily living activities which included walking. The ALJ found Rutt's testimony that she suffered chest pain after heart surgery not credible due to diagnostic testing indicating no acute abnormalities. Further, evidence of Rutt's noncompliance with medication and continued smoking supports the ALJ's conclusions. The ALJ based his decision on the findings of the state agency physicians rather than Rutt's testimony because it was more consistent with and more supported by the overall objective evidence. Simply put, Rutt did not meet her burden of providing objective medical evidence that would support a finding that her impairments met a listing. Accordingly, the ALJ's step three determination that Rutt's impairment did not meet a medical listing is supported by substantial evidence.

> **b. Substantial evidence supports the ALJ's step three determination that Rutt's combination of impairments did not equal a medical listing.**

If a claimant's impairments do not meet any medical listing, the ALJ must consider whether the impairments cumulatively equal a listing. 20 C.F.R. §§ 404.1520(d), 404.1526(a). If the impairments equal a listing, the ALJ will deem the claimant disabled. *Id.* If the impairments neither meet nor equal a listing, the claimant's residual functional capacity is evaluated at step four to determine their functional abilities on a day-to-day basis. *Id.* The burden of proving that impairments equal a listing is on the claimant. *Id.*

In this case, Rutt argues that the ALJ should have found that the combination of her injuries medically equaled various listings. Specifically, Rutt contends that her hip injury, combined with evidence of poor lower extremity functioning, equaled listing § 1.03. Rutt also contends that her sternum injury, combined with the pain it causes when moving her arms, should equal listing §§ 1.02B and 1.07. Further, Rutt alleges that her COPD, combined with her

complaints of asthma, should medically equal listing §§ 3.02 and 3.03. Finally, Rutt argues that an additional medical expert should have been called to consider whether her continued complaints regarding her sternum and hip combined to equal a listing. These arguments fail.

In his decision, the ALJ found no medical evidence indicating that Rutt's combined impairments equaled a listing. When determining that Rutt's hip injury and subsequent reduced muscle strength did not equal a listing, the ALJ considered Dr. Montoya's July 2007 and October 2007 Residual Functional Capacity Assessments and Dr. Sices' consultative examination. These assessments indicated that, although Rutt was precluded from prolonged standing, walking, and heavy lifting, Rutt could still ambulate effectively. Therefore, the ALJ found Rutt's contention that her hip injury and reduced muscle strength medically equaled listing § 1.03 unpersuasive because that listing requires a finding that the claimant is unable to ambulate effectively. Ineffective ambulation under the regulations generally requires a showing that the claimant is unable to walk without a walker or two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to carry out routine ambulatory activities, and the inability to climb a few steps at a reasonable pace using a single handrail. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Rutt's testimony that her daily activities included walking around and doing light housework, combined with a lack of evidence indicating that she required assistance while walking, supports the ALJ's determination that her hip injury did not equal a listing. Lastly, Rutt claims that the ALJ failed to discuss Dr. Sices' finding that her left hip injury reduced her range of motion and resulted in diminished muscle strength. This argument also fails because the ALJ did address these concerns. Rutt fails to indicate that, although reduced, her range of motion and muscle strength were still within normal

limits. In fact, the ALJ noted that Dr. Sices' overall examination findings noted no impairments related to gait or coordination.

Next, the ALJ found that no medical evidence indicated that Rutt's sternum injury and the pain it causes in her arms equaled a listing. Rutt testified that the wires connecting her sternum caused discomfort in her arms and disallowed her from using a vacuum or pulling sheets down over the bed. Rutt alleges that this injury, combined with her arm discomfort, medically equaled listing §§ 1.02B and/or 1.07. Listing § 1.02B requires a showing that a joint cannot perform fine and gross movements effectively. Listing § 1.07 requires a showing that continued surgery is necessary on the humerus, radius, or ulna bones in the arm. Given the objective medical evidence that indicated Rutt retained the capacity for normal fine and gross finger manipulations, the ALJ dismissed her testimony that she lacked the ability to grasp and grip objects. Thus, Rutt's sternum injury and complaints of arm pain do not combine to equal listing § 1.02B. Further, the ALJ's determination that Rutt's sternum injury did not equal a listing under § 1.07 is supported by the lack of evidence indicating how her sternal condition relates to a joint or the bones of the arm. Without objective medical evidence establishing the need for continued surgery on the arm bones, the ALJ could not find that Rutt's sternum injury equaled listing § 1.07.

Finally, Rutt's argument that her post-surgical sternum injury required an additional medical expert is unpersuasive because the ALJ was familiar with the evidence. The ALJ's familiarity with the evidence and the relevant listings required a finding that Rutt's sternum injury did not equal a listing. Although Rutt established chest discomfort, she did not show that this discomfort resulted in the loss of functional use of her arms—a necessary requirement for

equivalence. Therefore, the ALJ's determination that Rutt's sternum injury does not equal a listing is supported by substantial evidence.

Lastly, Rutt argues that the ALJ should have found that her respiratory impairments medically equaled listing § 3.02, which covers COPD, and listing § 3.03, which covers asthma. An ALJ is required to look at these listings when the claimant has been diagnosed with a severe respiratory impairment. 20 C.F.R. §404.1520(a)(4)(ii) ("If you do not have a *severe* medically determinable physical . . . impairment . . . we will find that you are not disabled") (emphasis added). In this case, the ALJ considered Rutt's impairments but, in light of her treating physician's diagnosis, found that "findings related to a breathing condition show use of medication to be helpful and otherwise do not support more than mild limitation." (Tr. 88). Rutt's *mild* COPD diagnosis, paired with multiple physicians' findings that she was noncompliant with her medications and tests indicating that her lungs were clear with only moderate wheezing on a few occasions, supports the ALJ's determination that her COPD did not equal a listing. Although Rutt provides evidence that she was treated for respiratory complaints at the ER on multiple occasions, the ALJ's decision is warranted because the listings require a showing that respiratory impairments persisted in spite of prescribed treatment. Further, the listings require severe, not mild, limitation. Thus, the ALJ's finding that Rutt's respiratory impairments did not equal a medical listing is supported by substantial evidence because she did not follow prescribed treatments regarding her COPD and her physician's deemed it mild.

As indicated above, the ALJ's determination that none of Rutt's impairments met or medically equaled a listing is supported by substantial evidence. Thus, the ALJ's findings regarding Rutt's impairments are free of legal error.

**2. Substantial evidence supports the RFC identified by the ALJ.**

A claimant's RFC determines their ability to do work-related activities in spite of limitations caused by medically determinable impairments. SSR 96-8p. In determining a claimant's RFC, an ALJ must evaluate all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(3). The record includes medical signs, diagnostic findings, claimant's testimony about severity and limitations due to impairments, statements by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p. When considering non-medical evidence, such as a claimant's symptoms, the ALJ must follow a two-step process. First, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the claimant's pain. 20 C.F.R. § 404.1529. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit functioning. *Id.*

Here, Rutt argues that the ALJ failed to take account of all of her impairments when determining her RFC. Further, she alleges that the ALJ should have obtained medical expert testimony on how the combined effect of her impairments would deter her from sedentary work. These arguments fail.

### a. The ALJ considered all of Rutt's impairments when determining her RFC.

Rutt alleges that the ALJ overlooked her diagnosis of COPD and complaints of fibromyalgia when determining her RFC. She contends that deeper consideration of these impairments would have resulted in an RFC reflecting her inability to hold a sedentary job. As explained below, the ALJ did consider these impairments when determining Rutt's RFC.

First, as already noted, the ALJ considered Rutt's COPD diagnosis but, consistent with the conclusions of her physicians, found that it was a mild limitation that could be remedied

15

through medication and smoking cessation. This finding is consistent with medical evidence indicating only mild lung obstruction, normal chest CTs, and clear chest x-rays. Thus, although Rutt may disagree with the ALJ's findings, it cannot be said that the ALJ overlooked her COPD diagnosis.

Second, Rutt alleges that the ALJ overlooked her complaints of fibromyalgia when determining her RFC. This argument also fails. In his RFC determination, the ALJ found that, although fibromyalgia was "suggested on one occasion," there was no evidence that Rutt was on medication or treating the symptoms in any way. Further, in the absence of any diagnosis, the ALJ found that complaints of fibromyalgia could not be deemed a severe medical impairment. Finally, the ALJ's determination that Rutt's complaints were not credible is consistent with examination findings and the absence of any medical evidence or opinion. The ALJ found Rutt's testimony regarding the limiting effects of her pain not credible because of inconsistency. During the administrative hearing, Rutt reported that she ceased working due to heart problems and body pain. However, later on in the hearing, Rutt reported that she ceased work due to an inability to handle stress. Rutt's credibility was further diminished by testimony indicating that her problems were related to pain, not alcohol. This testimony contradicted multiple ER visits which involved episodes of intoxication due to overconsumption and doctor assessments that established a history of alcohol abuse. Thus, the ALJ did not overlook Rutt's complaints of fibromyalgia. The ALJ simply did not believe these complaints to be credible.

As indicated above, the ALJ acknowledged both Rutt's COPD and fibromyalgia when determining her RFC. The ALJ determined that, although these conditions could reasonably cause the symptoms alleged in Rutt's complaint, the medical evidence and testimony of Rutt and

her evaluating physicians did not support a finding that they impacted her RFC. Thus, the ALJ's RFC determination includes all of Rutt's impairments and is supported by substantial evidence.

### b. The ALJ properly acted within his discretion when he did not call an additional medical expert.

Lastly, Rutt contends that an additional medical expert should have been consulted to analyze whether her combined impairments diminished her capacity for sedentary work. Rutt argues that the ALJ's refusal to call a medical expert for an additional examination constitutes reversible error. This argument fails. An ALJ need not obtain medical expert testimony where the evidence on record is already adequate for discerning whether the claimant is or is not disabled. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Therefore, an ALJ acts within his discretion in deciding not to call a medical expert at this stage of the sequential evaluation process.

Here, the ALJ was not required to consult a medical expert because the record already provided sufficient evidence that Rutt was not disabled. On two separate occasions Rutt was given an RFC assessment that indicated she was not disabled. On five separate visits to the ER between 2007 and 2009, Rutt's complaints of chest pain resulted in clear diagnostic testing. Multiple physician assessments indicated that Rutt's impairments would be significantly reduced if she complied with her medications. The ALJ found that this noncompliance was due to choice and priority rather than economic limitation. Thus, the ALJ's decision that Rutt's impairments did not meet or combine to equal a listing, is supported without additional testimony. Therefore, Rutt's argument that an additional medical expert should have been consulted during the RFC determination is unpersuasive. Additional testimony by a medical expert is only necessary at the prior step when disability is being determined. Given the extensive medical findings contained in the ALJ's decision regarding Rutt's hip injury, cardiac injury, COPD and complaints of

fibromyalgia, there was no need for additional evidence. The ALJ's determination that additional medical expert testimony was unnecessary is supported by substantial evidence.

### III. CONCLUSION

This Court concludes that the ALJ's decision is supported by substantial evidence and free of legal error. First, the ALJ properly determined that Rutt's impairments neither met nor equaled a listing. Second, the ALJ's consideration of Rutt's impairments when determining her RFC was consistent with the medical record and supported by substantial evidence. Therefore, Rutt's motion to reverse or remand is **DENIED**. This Court **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 12th Day of April, 2013

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge